

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF | § | No. 08-24-00060-CV |
| ALVARO MORALES AKA ALVARO | § | Appeal from the |
| MORALES LICON. | § | Probate Court No. 2 |
| | § | of El Paso County, Texas |
| | § | (TC# 2021-CPR00831) |

## MEMORANDUM OPINION

Before us is a dispute between sisters about title to property that was the subject of a contract for deed signed by their late father, Alvaro Morales. Shortly before Alvaro's death, his daughter Appellee Veronica Martinez paid the remaining balance owed under the contract. As the dependent administrator of the estate, she claims that Alvaro's equitable title passed to the estate upon his death. Another daughter, Appellant Armida Williams, claims that under the terms of the contract for deed, only she had the right to pay the mortgage once Alvaro became ill and the title vested in her before his death, preventing the estate from having any interest. Armida and her minor son, Isaiah Jesus Williams, who currently holds legal title, appeal the trial court's summary judgment against them. For the reasons below, we affirm.

# I. Factual and Procedural Background

On December 5, 2009, Alvaro Morales signed a "Bill of Sale" purchasing real property in Fabens, Texas, from Ana Lilia Perez. The contract required that Alvaro pay $11,000 in two equal payments and assume the remaining mortgage payments to Danbill Partners, L.P., the balance of which was $19,999. The bill of sale also states as follows:

> When the property is paid in full the title will be transferred to buyers [sic] name. If buyer is un able [sic] to make payments on the property due to death or being disabled, Armida Williams (daughter) . . . will take over the reaming [sic] balance of the property and will be transferred to Armida Williams.

The contract was signed by Alvaro and Perez and notarized.

On April 20, 2021, Veronica purchased a cashier's check and paid the mortgage balance of $8,196.27. Veronica claims that she did this after Alvaro requested the payoff amount and asked her to pay the balance.

Alvaro passed away on April 27, 2021, and was survived by a wife and nine children. Veronica filed an application to determine heirship and was appointed the dependent administrator. She also filed, and the trial court approved, an inventory and appraisement which listed the property in Fabens as community property of the estate.

Meanwhile, on May 25, 2021, having received the balance of the mortgage, Danbill executed a release of lien on the property. The seller, Perez, refused to deed the property to the estate and instead deeded it to Armida's minor son, Isaiah, allegedly at Armida's request. Veronica, as administrator of the estate, filed suit against Armida and Isaiah (collectively, the

2

Williamses) to quiet title.[1] The Williamses countersued to quiet title and for tortious interference with a contract.[2]

Veronica filed a traditional motion for summary judgment on the estate's quiet title claim and a traditional and no-evidence motion for summary judgment on both of the Williamses' causes of action. The trial court granted summary in favor of Veronica on all claims.

The Williamses raise three issues on appeal, arguing that the trial court erred in granting Veronica's summary judgment on (1) the estate's suit to quiet title; (2) the Williamses suit to quiet title; and (3) the Williamses' tortious interference claim.

## II. STANDARD OF REVIEW

Veronica moved for traditional summary judgment on both the estate's quiet title claim and the Williamses' quiet title and tortious interference claims. A party may move for summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). When the movant seeks summary judgment on her own claims, she must conclusively prove each essential element of her cause of action. *George Fleming & Fleming & Associates, L.L.P. v. Wilson*, 694 S.W.3d 186, 190 (Tex. 2024), reh'g denied (Aug. 30, 2024). When she moves for summary judgment on the other party's claims she must negate an element of the plaintiff's cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). The burden does not shift to the nonmovant to respond or produce evidence unless the movant meets her burden. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021).

---

[1] Veronica also asserted claims against Perez. Those claims were severed into their own case and are not a part of this appeal.

[2] The Williamses also sought to recover on claims of promissory estoppel, unjust enrichment, and constructive trust. Those claims were severed into the new case and are not before us.

Veronica also filed a no-evidence summary judgment on the Williamses' counterclaims. A party may file a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). To avoid summary judgment, the nonmovant must produce "more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a necessary element is less than a scintilla and will not support a summary judgment. *Id*. (quoting *Kindred v. Con/Chem, Inc*., 650 S.W.2d 61, 63 (Tex. 1983).

We review summary judgments *de novo* and determine if the nonmovant produced "more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). When the trial court does not specify in its order the ground on which it granted summary judgment, we must affirm if the judgment is proper on any ground. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. ANALYSIS
### A. Quiet title claims

Veronica filed a traditional motion for summary judgment on the estate's quiet title claim and a traditional and no-evidence motion on the Williamses' quiet title claim. Because the parties' claims and defenses for their competing quiet title claims rely on the same evidence and arguments, we address them together.

The elements of a quiet title claim are "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61–62 (Tex. App.—El Paso 2012, pet. denied). We turn to whether Veronica conclusively proved each of these elements for her claim and negated them for the Williamses' claim.

### (1) Interest in the property

This first element is really one of standing: "the plaintiff must allege right, title, or ownership of the property with sufficient certainty to warrant judicial interference." *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 567 (Tex. App.—Amarillo 2013, pet. denied). To meet this element, the plaintiff does not have to show that he has *title* to the property, just that he has an interest in the property, and the feeblest of interests will do. *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (1886) ("The action lies 'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'"); *see also Montengro*, 419 S.W.3d at 567; *Estate of Ward*, No. 02-24-00330-CV, 2024 WL 3948018, at *4 (Tex. App.—Fort Worth Aug. 27, 2024, no pet.) (mem. op.).

Although titled "bill of sale," the contract between Alvaro and Perez was an executory contract, also known as a contract for deed. "A contract for deed is a form of real property conveyance in which the purchaser obtains an immediate right to possession but the seller retains legal title and has no obligation to transfer it unless and until the purchaser finishes paying the full purchase price[.]" *Shook v. Walden*, 368 S.W.3d 604, 624 (Tex. App.—Austin 2012, pet. denied); *see also Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). A contract for deed gives the purchaser an interest in the property. *Ferrara v. Nutt*, 555 S.W.3d 227, 240

(Tex. App.—Houston [1st Dist.] 2018, no pet.); *Cadle Co. v. Harvey*, 46 S.W.3d 282, 287 (Tex. App.—Fort Worth 2001, pet. denied); *Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Tex. Am. Bank/Levelland v. Resendez*, 706 S.W.2d 343, 346 (Tex. App.—Amarillo 1986, no writ).

Alvaro, as a purchaser under a contract for deed therefore had an interest in the property. The dispute is whether that interest became the estate's upon his death or whether it terminated before his death. The Williamses argue that it terminated and rely on the provision in the contract that states that if Alvaro "is un able [sic] to make payments on the property due to death or being disabled, Armida Williams . . . will take over the [remaining] balance of the property and will be transferred to Armida [.]" The Williamses construe the agreement to mean that no one could make a payment on Alvaro's behalf or at his direction. They argue that the rights and obligations under the contract for deed transferred to Armida when Alvaro was hospitalized, and that Veronica had no authority to pay off the mortgage to maintain his interest.[3]

First, we note that the provision obligating Armida to make payments is invalid and unenforceable. The provision essentially substituted Armida as the purchaser–purporting to give her the right to the property, but also obligating her to make payments. However, she did not sign the agreement. "An executory contract is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Prop. Code Ann. § 5.072(a). The statute of frauds also requires that a contract for the sale of real estate be signed. Tex. Bus. & Com. Code Ann. § 26.01(a)(2) (requiring that the contract be "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him").

---

[3] At the hearing on the Williamses motion for new trial and in their brief, they represent that Alvaro was hospitalized, and intubated, on April 20, 2021, the date that Veronica paid off the mortgage. The record does not contain any evidence of that fact. However, even if it did, it would not change our analysis of this issue.

6

Even if the provision was enforceable without Armida's signature, it is not evidence that the rights and obligations ever transferred to Armida. The contract does not state that Armida will take over payments if Alvaro dies or becomes disabled; it allows Armida to make payments if Alvaro *was unable to make payments* on the property due to death or being disabled. There was no evidence that he was unable to make the payments. Additionally, the contract does not prohibit someone from making a payment on Alvaro's behalf or at his request.

The contract for deed and proof that the mortgage was paid off are conclusive evidence that at the time of his death, Alvaro had an interest in the property. The same evidence negates this element of the Williamses' quiet title claim.

**(2)   Title to the property is affected by a claim by the other party**

The Williamses contend that Veronica did not conclusively prove this element, arguing that the deed to Isaiah was valid and Alvaro did not have superior title. However, validity of the claims to the property is the third element. All that is required for the second element is simply that there be a controversy, or competing claims, between the parties. *Vernon*, 390 S.W.3d at 61 ("A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property."). We discuss the Williams' arguments about the validity of Isaiah's deed below, in our discussion of the third element.

Here, Veronica attached as summary judgment evidence the special warranty deed transferring the property from Perez to Isaiah. This deed, if valid, affects the estate's claim to the property. Similarly, the estate's claim to the property affects the title held by Isaiah. However, this element, like the first, is only a preliminary finding establishing the right to bring a quiet title claim. Ultimately, a party's entitlement to summary judgment for a quiet title claim rises and falls on evidence of the third element, validity of the other party's claim. *See, e.g., Montenegro v. Ocwen*

7

*Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied) ("Thus, to state a claim to quiet title, a plaintiff must establish that the challenged claim to the property is invalid or unenforceable."); *Dalio Holdings I, LLC v. BRMK Lending, LLC*, No. 14-23-00007-CV, 2024 WL 4984179, at *4 (Tex. App.—Houston [14th Dist.] Dec. 5, 2024, no pet.) (affirming summary judgment because of party's failure to raise fact issue about the invalidity of the other part's claim).

### (3) Although the other party's claim is facially valid, it is invalid and unenforceable

Veronica's motion for summary judgment claimed that Perez's deed to Isaiah was invalid and unenforceable because Alvaro had equitable title which transferred to the estate when he died. The Williamses argue that Isaiah's deed is valid, and the estate's is not because, as they argued with the first element, Veronica did not have the right to make mortgage payments, and that right as well as the property itself transferred to Armida. They quote cases that explain that a contract for deed gives *a purchaser* the right to make payments on the property. *Ferrara*, 555 S.W.3d at 240 ("[u]pon execution of the contract for deed, the purchaser acquires an 'equitable right to make payments on the property and to receive a deed and legal title when he complete[s] the payments.'") (emphasis added) (quoting *Gaona v. Gonzales*, 997 S.W.2d 784, 786–87 (Tex. App.—Austin 1999, no pet.); *Flores*, 185 S.W.3d at 429 (describing a contract for deed as "a real–estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full"). But the import of these cases is that a contract for deed bestows certain rights on the purchaser, not that the purchaser himself is the only person who can make payments. The general statements about the nature of contracts for deed are not holdings that all payments must be made by the purchaser, and no one but the purchaser. And, as with the language

of the contract for deed, nothing in these cases prevents someone else from making a payment for the purchaser for any reason.

The Williamses also argue that because the mortgage company did not release the lien until after Alvaro's death "[Perez] possessed legal title to the Property, and she was free to convey the Property to who she wanted." Although Perez may have held legal title, she could not simply sell the property to whomever she wanted. Once the mortgage was paid in full, Alvaro was entitled to the transfer of legal title. *Pickle v. Whitaker*, 224 S.W.2d 741, 745 (Tex. App.—El Paso 1949, writ ref'd); *Resendez*, 706 S.W.2d at 346.[4]

Finally, in response to Veronica's motion for summary judgment, the Williamses produced Perez's affidavit and the proof of mortgage payments as evidence that the interest to the property transferred to her. They argue that this evidence raises a genuine issue of fact, precluding summary judgment against them. In her affidavit, Perez stated, "I conveyed [the property] to Armida Williams and Isaiah Williams, because it was the agreement between myself and Alvaro Morales Licon that if he died, that the Property be conveyed to Armida Williams by a Deed" (capitalizations in original removed). The directive to transfer property upon death must be in writing and meet other requisites of a will.[5] Tex. Est. Code Ann. § 251.051. The only writing here was the bill of sale which, at most, transferred the interest in the property to Armida *if* she took over the payments

---

[4] We note that even before the property was paid in full, Alvaro had an equitable interest in the property that would have prevented Perez from conveying the property to anyone else so long as payments were made. Tex. Prop. Code Ann. § 5.064 (allowing seller to rescind the contract only if the seller provides notice and the right to cure to the purchaser).

[5] In 2015, the Legislature enacted the Texas Real Property Transfer on Death Act, which allows for the nontestamentary conveyance of real property upon death. Tex. Est. Code Ann. §114.001 *et seq.* The Act only applies to deeds executed and acknowledged after September 1, 2015. *Id*. § 114.003.

because Alvaro was unable to make them. The bill of sale makes no provision for transfer to her if he died after he paid off the mortgage. [6]

Regarding monthly payments, the Williamses produced the 2011 year-to-date statement from Danbill Partners, L.P. The statement lists the dates and amounts of payments, but not who made the payments. In fact, the statement is addressed to Perez, not Alvaro or Armida. The Williams also point to money order receipts as evidence that Armida made mortgage payments. But none of the receipts, on their face, show that they were from Armida. In fact, the receipts that include the sender's information list Perez as the sender. There was no evidence by way of affidavit or otherwise that show that Armida made those payments.

Veronica conclusively proved that Isaiah's deed is invalid and proved the estate's equitable title. Neither Perez's affidavit nor the mortgage receipts raised a genuine issue of fact.

Veronica conclusively proved each element of the estate's quiet title cause of action and conclusively negated elements of the Williamses' quiet title claim. Further, the Williamses failed to meet their burden to produce more than a scintilla of evidence raising a fact issue. We therefore overrule issues one and two.

---

[6] Although not addressed by the parties, we note that even if the bill of sale did provide for such a transfer, the property was community property and both spouses were required to join in the conveyance. Tex. Fam. Code Ann. §§ 3.102(c), 5.001; *Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). When property is in only one spouse's name, it is presumed that the property is that spouse's sole management property. Tex. Fam. Code Ann § 3.104(a). A third party can rely on this presumption, but only if they show "(1) the property conveyed was presumed to be subject to the named spouse's sole management; (2) the grantee was not party to a fraud on the unnamed spouse; and (3) the grantee had no notice of any lack of authority of the named spouse to convey the property." *Jean*, 118 S.W.3d at 6; *see also Matter of Estate of Abraham*, 583 S.W.3d 890, 896 n.3 (Tex. App.—El Paso 2019, pet. denied). Because of our holding, we would not need to reach this issue even had it been raised by the parties.

## B. Tortious interference with contract

The Williamses claim that Veronica tortiously interfered with the contract by paying off the mortgage because, had she not done so, the rights to the property would have transferred to Armida. Veronica moved for traditional and no-evidence summary judgment on the Williamses' tortious interference with contract claim. When a party files for both traditional and no-evidence summary judgments on the same claim, we review the no-evidence motion first "because if the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)

To establish a tortious interference with a contract claim, the plaintiff must show: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Mr. W Fireworks, Inc. v. NRZ Inv. Group, LLC*, 677 S.W.3d 11, 26 (Tex. App.—El Paso 2023, pet. denied) (citing *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) and *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

Veronica's motion alleged that Appellants did not have evidence of any of the four elements. She claims:

> There is no evidence of a valid contract whereby Armida and/or Isaiah are parties or direct intended beneficiaries, there is no evidence that Movant willfully and intentionally interfered with any contract, there is no evidence that alleged interference proximately caused Non-Movants to suffer injury, and there is no evidence that the alleged interference caused actual damages.

To avoid summary judgment, the Williamses were required to produce more than a scintilla of evidence supporting each of these elements. Tex. R. Civ. P. 166a(i).

11

In their response, the Williamses argue that Perez's affidavit and the bill of sale are evidence of the first element–a contract between Alvaro and Perez that the property would go to Armida upon his death.[7] However, they failed to address the remaining three elements or point out any evidence of those elements. "When a non-movant to a no-evidence motion for summary judgment does not address challenged elements or produce evidence raising a fact issue on those elements, the trial court must grant summary judgment in the movant's favor." *Lewis v. Aurora Loan Services*, No. 01-15-00362-CV, 2016 WL 887176, at *3 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, no pet.) (mem. op.); *see also Harris v. Ebby Halliday Real Estate, Inc.*, 345 S.W.3d 756, 760 (Tex. App.—El Paso 2011, no pet.) (affirming summary judgment because the plaintiffs failed to address a challenged element of their claim); Tex. R. Civ. P. 166a cmt. 1997 (nonmovants must "point out evidence that raises a fact issue on the challenged elements"); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (same).

Because the Williamses did not address three of the four elements of their claim, much less produce more than a scintilla of evidence of those elements, we overrule issue three.

## IV. CONCLUSION

We hold that Veronica conclusively proved elements of the estate's quiet title claim and that the Williamses failed to meet their summary judgment burden. We affirm the judgment of the trial court.

---

[7] They also claim that the money order receipts are evidence that Armida had an interest in the property; however, an interest in the property is not an element of tortious interference with a contract.

MARIA SALAS MENDOZA, Chief Justice

March 21, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.